STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **I.H.**

**No. 20-0874** (Webster County 19-JA-30)


**MEMORANDUM DECISION**


Petitioner Mother C.W., by counsel Andrew Chattin, appeals the Circuit Court of Webster County's October 5, 2020, order terminating her parental rights to I.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The proceedings below began in July of 2019, when the DHHR filed its initial abuse and neglect petition. The DHHR later filed an amended petition in August of 2019. Neither of these documents were included in petitioner's appendix record, although they are reflected on the docket sheet petitioner did include. On September 19, 2019, the DHHR filed its second amended petition alleging that petitioner abused and neglected the child by allowing the child to live with the maternal grandmother in a home with individuals who engaged in substance abuse and failed to properly supervise the child and other children who are not at issue in this appeal. According to the second amended petition, petitioner gave physical custody of the child to the grandmother shortly after the child's birth because petitioner "had been involved in abuse and neglect

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

proceedings in Virginia due to drug use." The DHHR further alleged that petitioner used controlled substances in an attempt to self-regulate her bipolar disorder. Petitioner was ordered to submit to drug screening prior to the second amended petition's filing, however, her initial sample did not have an appropriate temperature reading and she was informed that she would have to provide a second sample. According to the DHHR, petitioner became irate and a bailiff from the courthouse had to intervene. A Child Protective Services ("CPS") worker informed petitioner that she was free to leave, but that if she failed to produce a screen then it would be considered positive. Petitioner then "responded . . . with various profanities . . . [and] screamed that it was a conspiracy to keep the kids away from everybody" before leaving without providing a sample. As such, the DHHR also alleged that petitioner abused and neglected the child because of her addiction to controlled substances and its impact on her ability to properly parent.

Following the filing of the second amended petition, petitioner moved for an improvement period. In December of 2019, the circuit court held an adjudicatory hearing. Petitioner did not attend the hearing, but was represented by counsel. During the hearing, the DHHR presented testimony from a CPS worker regarding the allegations in the petition. Ultimately, the circuit court adjudicated petitioner on the basis of her continued substance abuse, its negative impact on her ability to properly parent the child, and her failure to maintain a fit and suitable home.

In August and September of 2020, the circuit court held dispositional hearings, during which the circuit court heard testimony from multiple individuals, including several named respondents and a CPS worker. Petitioner also testified and indicated that she did not want custody of her daughter. According to petitioner, she wanted her mother, who was also adjudicated of abuse and neglect in these proceedings, to have custody of the child because "a Virginia judge seen her fit" to care for the child. Petitioner clarified, "I don't see why none of these people can [have custody of the child], I don't understand." Petitioner further asserted that a court in Virginia placed the child with her mother because petitioner was young, not because she abused drugs. Petitioner was also asked to explain the significance of April 20, her wedding anniversary, and responded that she chose that day to get married because "[i]t's National Smoke Day, National Weed Day," in addition to the fact that it was the child's birthday. Petitioner also confirmed that she refused to provide her address to the DHHR during the proceedings, indicating that she did not have to answer to a CPS worker and would provide her lawyer with her address "if the Judge wants any information."

Based on the evidence, the circuit court found that petitioner failed to establish by clear and convincing evidence that she would comply with an improvement period and, in fact, had not accepted that she suffers from drug addiction. The circuit court found that petitioner failed to accept responsibility for her actions and demonstrated no change in her circumstances over fourteen months. In fact, the court originally continued the dispositional hearing in August of 2020 in order to permit petitioner to enroll in an inpatient substance abuse treatment program, but petitioner refused. Accordingly, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of

her parental rights was necessary for the child's welfare. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate her parental rights without first granting her an improvement period. Without belaboring petitioner's specific arguments, we find that the resolution of this matter turns entirely upon petitioner's failure to acknowledge the conditions of abuse and neglect at issue.

As this Court has routinely held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The evidence below was uncontroverted that petitioner failed to acknowledge or accept responsibility for the child's abuse and/or neglect, as the circuit court found. On appeal, petitioner distorts the record and attempts to minimize her conduct in order to argue that denial of her motion for an improvement period and termination of her parental rights was in error. We do not find these arguments availing.

First, petitioner's assertion that one of the main allegations against her was that she gave up custody of her daughter to the maternal grandmother is a gross oversimplification of the evidence. On the contrary, the DHHR alleged that petitioner's failure to provide the child with a

---

[2]The father's parental rights were also terminated below. The permanency plan for the child is adoption in the current foster home.

3

fit and suitable home resulted in her being exposed to pervasive drug use, domestic violence, and improper supervision. That petitioner asserts on appeal that her parental rights to the child were never terminated in Virginia is simply irrelevant to the fact that petitioner exposed the child to incredibly harmful circumstances by permitting the child to remain in the grandmother's home. In short, the DHHR was not required to establish that petitioner's rights were terminated in Virginia simply because it asserted that, factually, the child's custody with the grandmother was related to some prior proceeding.

Petitioner also asserts that her substance abuse was an insufficient basis upon which to terminate her parental rights because she testified that she obtained suitable housing and was employed in spite of her ongoing drug use. Petitioner also admits that she tested positive for marijuana at every hearing below, but argues that this was the only drug for which she tested positive. Additionally, petitioner asserts that "there was never any evidence or testimony that [she] used marijuana around I.H." This argument, however, is irrelevant to our determination concerning disposition, as it is unclear why petitioner believes that her continued failure to comply with the court's direction to cease abusing controlled substances and attend substance abuse treatment to remedy the conditions of abuse and neglect is in any way related to whether she abused the drug in the child's presence. Contrary to petitioner's argument, her admitted continued substance abuse only underscores her complete refusal to acknowledge any issue of abuse or neglect at issue, as the circuit court found.

Indeed, the circuit court cannot be said to have erred in denying petitioner an improvement period to correct conditions of abuse and neglect that she refused to acknowledge existed. While petitioner argues that she established that she was likely to fully participate in an improvement period, as required by West Virginia Code § 49-4-610, she nevertheless ignores the fact that her failure to acknowledge the abuse and neglect at issue would have resulted in an improvement period being an exercise in futility. As we have explained, a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Indeed, petitioner clearly evidenced her refusal to comply with basic requirements below, including that she attend substance abuse treatment to correct a condition of abuse and/or neglect upon which she was appropriately adjudicated. Petitioner even went so far as to refuse to provide the DHHR with her address so that it could confirm whether she obtained appropriate housing for the child, evidencing her unwillingness to take even the most basic step toward compliance. Therefore, it is clear that the circuit court did not err in denying petitioner an improvement period.

This same evidence also supports the circuit court's termination of petitioner's parental rights. Again, petitioner's refusal to acknowledge the conditions of abuse and neglect resulted in those conditions being untreatable, which fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as meaning "that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Given petitioner's inability to correct the conditions of abuse and neglect due to her refusal to acknowledge them, it is clear the circuit court did not err in making this finding. Additionally, the court found that the child's welfare

required termination of petitioner's parental rights, given her failure to acknowledge, or otherwise accept responsibility for, her conduct. Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon these findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). On appeal, petitioner argues that the circuit court should have returned custody of the child to her, despite the fact that she explicitly testified at the dispositional hearing that she did not want custody of the child. Instead, petitioner believed that her mother or one of the other adults who were adjudicated of abuse and/or neglect should have been permitted to retain custody of the child. Specifically, petitioner testified that she did not understand why one of these individuals could not exercise custody, only further highlighting her refusal to acknowledge the conditions of abuse and neglect at issue. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 5, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton